IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BEZHAN MIKELADZE,**<br>       **Plaintiff,**<br><br>           v.<br><br>**RAYMOURS FURNITURE COMPANY,**<br>**INC., doing business as "RAYMOUR &**<br>**FLANIGAN,"**<br>       **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO.  20-2224** |

**DuBois, J.**                                                                                                  **December 8, 2020**

**M E M O R A N D U M**

### I.     INTRODUCTION

This is a wrongful termination of employment case arising out of alleged retaliation by defendant, Raymours Furniture Company, Inc., against one of its former employees, plaintiff, Bezhan Mikeladze.  Defendant argues in its motion to dismiss that, pursuant to plaintiff's employment contract, plaintiff's claims must be brought in arbitration and they are barred by the shortened statute of limitations provided in the contract.  The employment contract was written in English, a language plaintiff claims he does not fully understand.

Presently before the Court is defendant's Motion to Dismiss Plaintiff's Amended Complaint and for Attorneys' Fees and Costs or, Alternatively, to Compel Arbitration and for Attorneys' Fees and Costs.  For the reasons set forth below, the motion is denied.

### II.    BACKGROUND

#### A.  The Agreement

The facts as alleged in the Amended Complaint, accepted as true for purposes of this motion, are as follows.  On or about September 10, 2014, plaintiff "was employed by [defendant] performing furniture delivery . . . in Philadelphia, Pennsylvania." Am. Compl. ¶¶ 17, 31.

"Plaintiff's employment ended later that Fall and he was subsequently rehired on or about January 5, 2015." *Id*. ¶ 18.  On or about February 20, 2015, plaintiff "was presented with . . . an Associate's Agreement & Consent" (the "Agreement"). *Id*. ¶ 19.  The Agreement was written in English. *See id.* ¶ 26.  Plaintiff is from the country of Georgia, and he "understands only extremely limited English. [He] speaks Georgian and Russian." *Id*. ¶¶ 20, 21.  At the time he was hired, defendant "was aware [plaintiff] did not speak or understand English." *Id*. ¶ 22.

### i. *Arbitration and Statute of Limitations Provisions*

The Agreement states that plaintiff "agree[d] to arbitrate all Claims . . . regarding [his] employment." McPeak Decl., Ex. B.[1]  Furthermore, the Agreement states that plaintiff "also agree[d] . . . to file an arbitration demand with the [arbitration] Administrator no later than 180 days after such Claims arise." *Id*.

### ii. *Translation of Agreement*

"At the time [plaintiff] was hired, and later on or about February 20 of 2015 after [he] was rehired," Zaza Shukakidze, defendant's Regional Director of Operations, directed plaintiff to sign the Agreement "if he wished to remain employed" by defendant.  Am. Compl. ¶ 24.  Shukakidze did not allow plaintiff "to take the paperwork home to review and have translated, nor was a paper, translated copy of the paperwork provided to [plaintiff] either when he was initially hired, or after he was rehired." *Id*. ¶ 25.

"Instead, Mr. Shukakidze indicated that he would translate the documents for [plaintiff]." *Id*. ¶ 26.  Shukakidze also speaks Georgian and Russian. *Id*. ¶ 23.  "During this 'translation,' Mr. Shukakidze did not indicate to [plaintiff] that the [Agreement] . . . shorten[ed] the statute of

---

[1] Documents that are "integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Plaintiff explicitly relies upon the Agreement in the Amended Complaint.  The Court thus considers the Agreement when ruling on defendant's motion.

2

limitations" and "requir[ed] [plaintiff] to submit any potential claims against [defendant] to arbitration." *Id*. ¶ 27.  The Agreement was "presented to [plaintiff] on an exclusively 'take it or leave it' basis." *Id*. ¶ 28.  Plaintiff "thought he was aware of what he was signing given the purported translation by another individual who spoke his language . . . ." *Id*. ¶ 30.

### B. Plaintiff's Injury

On or about April 9, 2018, "while [plaintiff] was delivering furniture for work, a dresser weighing over 200 pounds" fell onto plaintiff's hand and arm, causing severe pain. *Id*. ¶¶ 38, 39. "The Company physician confirmed [plaintiff's] workplace injury." *Id*. ¶ 53.  Plaintiff "show[ed] [] the paperwork confirming his injury" to defendant's Operations Manager, Dale Donelson.  *Id*. ¶¶ 32, 54.  "Mr. Donelson became angry, calling [plaintiff] a liar and . . . openly admitting that [Donelson] wanted to fire [plaintiff]." *Id*. ¶¶ 55, 57.  Plaintiff's "interactions with Mr. Donelson made clear that . . . Mr. Donelson did not want any record or confirmation of the injury for [plaintiff] to file a workers' compensation claim." *Id*. ¶ 47.

### C. Investigation and Termination of Plaintiff

On or about April 10, 2018, plaintiff called defendant's Human Resources to "report the entire incident, including . . . Mr. Donelson's statement that he wanted to fire him in retaliation for reporting a workers' compensation injury . . . ." *Id*. ¶ 60.  "Human Resources told [plaintiff] that he was suspended pending an investigation of the incident." *Id*. ¶ 61.  On or about April 13, 2018, plaintiff "was informed that he was being terminated over a verbal altercation with another employee from 2016, two years prior." *Id*. ¶ 64.

### D. The Present Action

Plaintiff initiated the present action on March 19, 2020 and filed an Amended Complaint on June 1, 2020.  In his Amended Complaint, plaintiff alleges "[d]efendant terminated [him] in

retaliation for reporting his workplace injury, seeking workers' compensation benefits, and for filing and/or suggesting that he would file a workers' compensation claim." Am. Compl. ¶ 72.

On June 8, 2020, defendant filed a Motion to Dismiss Plaintiff's Amended Complaint and for Attorneys' Fees and Costs or, Alternatively, to Compel Arbitration and for Attorneys' Fees and Costs.  Plaintiff filed his response on June 22, 2020, and defendant filed a reply on June 29, 2020.  The motion is thus ripe for decision.

### III.     LEGAL STANDARD

#### A.  Motion to Compel Arbitration

Depending on the nature of the complaint and its supporting documents, a motion to compel arbitration may be evaluated under either the standard set forth in Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.  *See Guidotti v. Legal Helpers Debt Resolution*, *L.L.C.*, 716 F.3d 764, 773–76 (3d Cir. 2013).  "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773–74.  "In those circumstances, the question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis for rejecting the affirmative defense." *Id.*  In contrast, where the affirmative defense of arbitrability is not apparent on the face of the complaint or documents the complaint relies on, "the issue should be judged under the Rule 56 standard." *Id.*

The Court concludes that a Rule 12(b)(6) standard applies to defendant's motion to compel arbitration on the ground that "the affirmative defense of arbitrability . . . is apparent on the face of [the] complaint." *Id.*; *see also Laibow v. Menashe*, No. 19-4549, 2019 WL 6243368,

4

at *5 (D.N.J. Nov. 21, 2019) ("Where the issue can be decided without evidence, it will be, based on an application of the familiar Rule 12(b)(6) standard to the face of the pleadings.").

### B. Motion to Dismiss Based on Statute of Limitations

The determination of whether a plaintiff's claim is barred by the statute of limitations is "normally addressed at the summary judgment stage or at trial." *Kiser v. A.W. Chesterton Co.*, 770 F. Supp. 2d 745, 747 (E.D. Pa. 2011). However, "if the facts as to the timing of the claim are not in dispute," the Court "may address the statute of limitations at the motion to dismiss stage under Federal Rule of Civil Procedure 12(b)(6)." *Id.*

The parties do not dispute that Rule 12(b)(6) sets forth the appropriate standard for deciding defendant's argument that plaintiff's claim is time-barred.

### C. Rule 12(b)(6) Standard

Under the Rule 12(b)(6) standard, the Court assesses the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In

deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV. DISCUSSION

In its motion, defendant argues (a) plaintiff agreed to arbitrate all "employment-related claims," and therefore he should be compelled to arbitrate his claim; (b) plaintiff agreed to a 180-day statute of limitations, and therefore his claim is time-barred; and (c) defendant is entitled to the fees and costs it incurred in preparing this motion because plaintiff's counsel "brought and/or maintained this action with full knowledge of the [Agreement] and its terms." Def.'s Mot. at 1–2. The Court examines each argument in turn. Significantly, the Court notes at the outset that plaintiff sufficiently alleged he had no meaningful opportunity to learn of the Agreement's arbitration provisions and shortened statute of limitations.

#### A. Arbitrability of Plaintiff's Claim

##### i. Applicable Law

Questions of arbitrability are governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. "The FAA manifests 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). In doing so, the FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015)). Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2).

When deciding a motion to compel arbitration under the FAA, courts consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)).

ii. *Principles Governing Contract Formation*

"To determine whether the parties agreed to arbitrate, we turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). The parties agree that Pennsylvania law governs the Agreement. Def.'s Mot. at 18; Pl.'s Resp. at 5. .

Under Pennsylvania law, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.*, 47 A.3d 137, 144 (Pa. Super. 2012). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). Therefore, "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Upton v. Tribilcock,* 91 U.S. 45, 50 (1875).

However, a plaintiff's conduct does not constitute a manifestation of assent where he has no "meaningful opportunity" to learn the terms of the contract. *Solis v. ZEP LLC*, No. 19-4230, 2020 WL 1439744, at *5 (S.D.N.Y. Mar. 24, 2020); *Quiles v. Fin. Exch. Co.,* 879 A.2d 281, 286


the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2).

When deciding a motion to compel arbitration under the FAA, courts consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)).

ii. *Principles Governing Contract Formation*

"To determine whether the parties agreed to arbitrate, we turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). The parties agree that Pennsylvania law governs the Agreement. Def.'s Mot. at 18; Pl.'s Resp. at 5. .

Under Pennsylvania law, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.*, 47 A.3d 137, 144 (Pa. Super. 2012). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). Therefore, "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Upton v. Tribilcock,* 91 U.S. 45, 50 (1875).

However, a plaintiff's conduct does not constitute a manifestation of assent where he has no "meaningful opportunity" to learn the terms of the contract. *Solis v. ZEP LLC*, No. 19-4230, 2020 WL 1439744, at *5 (S.D.N.Y. Mar. 24, 2020); *Quiles v. Fin. Exch. Co.,* 879 A.2d 281, 286

(Pa. Super. 2005) (no contract where plaintiff was "not even given the opportunity to read the terms of the arbitration agreement"); *Walker v. Ryan's Family Steak Houses*, 400 F.3d 370, 384 (6th Cir. 2005) (no contract where plaintiffs had to sign "on the spot," had "no opportunity" to consult an attorney, and defendants "did not tell [them] they were waiving their right to a jury trial"); *Am. Heritage Life Ins. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (no contract where "ignorance by one party as to the terms of the agreement . . . was induced by acts of the other party"); Restatement (Second) of Contracts §§ 161, 163 (1981) (no contract where a party "neither knows nor has reasonable opportunity to know" the essential terms of the contract).

For example, in *Solis*, the court held that an arbitration agreement was unenforceable because the plaintiff, a restaurant delivery worker who could not read English, did not have a "meaningful opportunity" to review it. *Solis*, 2020 WL 1439744, at *5. In that case, the plaintiff was presented with an arbitration agreement while at work and was "effectively made to sign the agreement . . . on the spot without a meaningful opportunity to have the agreement translated." *Id.* Although the restaurant chef was "available to answer employees' questions," the agreement was "provided to plaintiff[] . . without [a] Spanish translation[]." *Id.* at *2, 5.

In contrast, in *Morales v. Sun Constructors, Inc.*, the Court of Appeals for the Third Circuit concluded that an arbitration clause in an employment agreement was enforceable against the plaintiff, an employee who did not understand English. 541 F.3d 218, 220 (3d Cir. 2008). The defendant-employer requested that "a bilingual [job] applicant" translate the agreement for the plaintiff, but the translator "did not specifically explain the arbitration clause" and the translation was therefore "incomplete." *Id.* at 220, 223 n.2. The Court stated that the arbitration clause was enforceable based on the fact that the plaintiff "did not ask [the translator] to translate

the document word-for-word or ask to take the agreement home and have it translated." *Id.* at 223.

Plaintiff in this case sufficiently alleged that he had no meaningful opportunity to learn of the arbitration provisions in the Agreement. As an initial matter, plaintiff alleges that he "was not aware of the arbitration provisions . . . because the individual who was supposedly translating the documents did not inform him of the arbitration provisions . . . ." Am. Compl. ¶ 30. Moreover, like the plaintiff in *Solis* who was "made to sign the agreement . . . on the spot," plaintiff alleges that the Agreement was "presented to him on an exclusively 'take it or leave it' basis." *Id.* ¶ 29; *Solis*, 2020 WL 1439744, at *5.

This case is unlike *Morales* where the plaintiff failed to "ask to take the Agreement home and have it translated, notwithstanding the fact that . . . in the past, he had paid someone to translate documents for him." *Morales*, 541 F.3d at 223. In this case, plaintiff alleges he was not allowed "to take [the Agreement] home to review and have translated." Am. Compl. ¶ 25.[2]

Because plaintiff sufficiently alleged he had no meaningful opportunity to learn of the arbitration provisions in the Agreement, defendant's motion is denied to the extent it seeks to compel arbitration of plaintiff's claim.[3]

---

[2] Defendant cites *Morales* for the proposition that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement . . . is enforceable." *Morales*, 541 F.3d at 222. The Court agrees that, standing alone, the fact that plaintiff has a limited understanding of English is immaterial. Nevertheless, as the *Morales* Court correctly stated, parties to a bargain must manifest their mutual assent to form a contract. *Id.* at 221. As discussed above, plaintiff sufficiently alleged he did not agree to the arbitration provisions in the Agreement.

[3] Defendant also argues that "Plaintiff's decision to continue his employment with [defendant] after signing the Agreement confirms his intention to be bound" because "continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of . . . an arbitration policy." Def.'s Mot. at 20. The Court rejects this argument on the ground that the Amended Complaint alleges that plaintiff did not have notice of the arbitration provisions in the Agreement.

### B. Statute of Limitations

"The statute of limitations governing a claim for wrongful termination under Pennsylvania law is two years." *Babich v. Mgmt. & Tech. Res.*, No. 06-1502, 2007 WL 764029, at *3 (W.D. Pa. Mar. 9, 2007). Parties may agree by contract "to shorten the statute of limitations." *Vino 100, LLC v. Smoke on the Water, LLC*, No. 09-4983, 2011 WL 2604338, at *4 (E.D. Pa. July 1, 2011). As discussed *supra*, (a) "the formation of a contract requires . . . a manifestation of mutual assent to the exchange," and (b) a plaintiff's conduct does not constitute a manifestation of assent where he has no "meaningful opportunity" to learn the terms of the contract. *MetroClub Condo*, 47 A.3d at 144; *Solis*, 2020 WL 1439744, at *5.

In this case, the Agreement stated that plaintiff was required to "file an arbitration demand . . . no later than 180 days after [his] Claims arise." McPeak Decl., Ex. B. Plaintiff initiated the present action on March 19, 2020, more than 180 days after April 13, 2018, the date on which plaintiff claims he "was informed that he was being terminated." Am. Compl. ¶ 64.

Plaintiff sufficiently alleged he had no meaningful opportunity to learn of the provisions in the Agreement shortening the statute of limitations. As discussed *supra*, plaintiff alleges that: (a) he "understands only extremely limited English"; (b) the Agreement was written in English; (c) the Agreement was presented to plaintiff on a "take it or leave it basis"; (d) he was not allowed to take it home to have it translated; and (e) "the individual who was supposedly translating the [Agreement] did not inform him of the . . . shortening of any statute of limitations." Am. Compl. ¶¶ 20, 25, 26, 29, 30. Accordingly, defendant's motion is denied to the extent it seeks dismissal on the ground that plaintiff's claim is time-barred.[4]

---

[4] Because the Court concludes that plaintiff sufficiently alleged he had no meaningfully opportunity to learn of the Agreement's arbitration provisions and shortened statute of limitations, the Court need not consider plaintiff's additional arguments that the Agreement is unenforceable due to unconscionability, fraudulent inducement, and lack of consideration.

### C. Attorneys' Fees and Costs

Finally, defendant argues that it should be reimbursed for the attorneys' fees and costs it incurred "in making this motion as well as their original motion (PACER Docket Entry No. 3) in connection with Plaintiff's original Complaint." Def.'s Mot. at 2. Because defendant's motion is denied, defendant is not entitled to attorneys' fees and costs.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Plaintiff's Amended Complaint and for Attorneys' Fees and Costs or, Alternatively, to Compel Arbitration and for Attorneys' Fees and Costs is denied. An appropriate order follows.